IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| United States of America,<br><br>**Plaintiff**<br><br>v.<br><br>Adrian Armstrong,<br><br>**Defendant** | **CRIMINAL NO.** 04-250 (JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Pending before this Court is Adrian Armstrong's ("Defendant") "Motion to Dismiss the Indictment and/or Exclusion/Suppression of Evidence" ("Motion to Dismiss/Suppress"). (Docket Nos. 146, 225). For the reasons set forth below, Defendant's Motion to Dismiss/Suppress is **GRANTED** in part and **DENIED** in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 25, 2004, Defendant was indicted with narcotics violations under 21 U.S.C. § 952(a), 963. He was also indicted with money laundering violations under 18 U.S.C. § 1957, 2. On May 17, 2007, Defendant filed the present Motion to Dismiss/Suppress. (Docket No. 146). In it, Defendant requests the dismissal of the indictment or, in the alternative, the suppression of certain audio recordings. The audio recordings allegedly contain conversations that took place between Defendant and Alexander Young Duffis ("Young-Duffis"), a cooperating individual for the Government.

Criminal No. 04-250 (JAG)                                                   2

During the conversations Defendant and Young-Duffis allegedly exchange information related to the commission of the crimes Defendant has been charged with. The audio recordings were identified as N-17, N-18, and N-22. Defendant alleges that the audio recordings have been tampered with by either Young-Duffis or the Government. To support his claim of tampering, Defendant submitted a report by the expert witness he retained, James A. Griffith ("Griffith"). (Docket No. 146-2). Defendant contends that the alleged tampering constitutes outrageous government misconduct in violation of his due process rights and requests the dismissal of the indictment. In the alternative, he requests that the audio tapes be suppressed. (Docket No. 146). On May 21, 2007, the Motion to Dismiss/Suppress was referred to Magistrate Judge Camille L. Vélez-Rive for a Report and Recommendation. (Docket No. 147).

Two suppression hearings were held before the Magistrate Judge. The first hearing was held on October 9, 2007. The second was held on September 25, 2008 in relation to N-17. Only N-17 was addressed at the hearing because the Government informed it was not going to introduce N-18 into evidence since its expert witness Barry Dicket ("Dickey") found that it was not an original copy. (Docket No. 257, p. 4, n.4). N-22 was not addressed at the hearing because no anomalies were found by the experts and the Magistrate Judge concluded it should be admissible at trial. Id. At the hearing, the Government called as its expert witness Dickey while

Crim. No. 04-250 (JAG)                                                3

the Defendant called Griffin.

On December 30, 2008, The Magistrate Judge issued her Report and Recommendation. (Docket No. 257). The Magistrate Judge recommends that Defendant's Motion to Dismiss/Suppress be granted in part and denied in part. Specifically, she recommends that Defendant's request regarding the suppression of N-17 be granted because it "contains several anomalies which make it unreliable." (Docket No. 257, p. 13). Based on the expert witnesses's testimony and reports, the Magistrate Judge identified the following anomalies: (1) N-17 is not a recording of a complete conversation but rather its segments are independently continuous (Docket No. 257, pp. 7-8); (2) the length of a stop/start in the recording cannot be determined (Docket No. 257, p. 10); (3) the abrupt stop at the end of the recording indicates that the conversation is incomplete (Docket No. 257, p. 11); (4) there is a controversy regarding whether the tape's header had been partially erased Id.; and, (5) the date on N-17's header (December 27, 2003) is different than that on the Government's Report of Investigation of January 8, 2004 (January 7, 2003) Id. The Magistrate Judge also noted that the Government had failed to present evidence pertaining to N-17's chain of custody. Additionally, the Magistrate Judge found that the Government did not present witness testimony regarding whether or not N-17 accurately reflects the conversation recorded. (Docket No. 257, p. 12). Furthermore, the Magistrate Judge recommends that the

Crim. No. 04-250 (JAG)                                                    4

request regarding the dismissal of the entire indictment be denied because the reasons for which N-17 was found to be unreliable do not amount to the level of Government misconduct that would warrant dismissal. (Docket No. 257, p. 14).

On February 11, 2009, the Government objected to the Report and Recommendation. (Docket No. 266). The Government specifically objects to the Magistrate Judge's finding that: "the government has not presented clear and convincing evidence that tape N-17 is a true, accurate and authentic recording of the conversation, at a given time between the parties involved." (Docket No. 266, p. 2). The Government also objects that the Magistrate Judge focused only on the portions of N-17's transcript that correspond to the moments in the conversation right before and after the stop/start in the recording. The Government additionally objects to the Magistrate Judge's finding that the government had failed to present evidence regarding N-17's chain of custody. (Docket No. 266, p. 7).

On February 12, 2009, Defendant filed his Objections to the Report and Recommendation. (Docket No. 268). Defendant objects to the Magistrate Judge's refusal to recommend the dismissal of the entire indictment. He argues that, even though cases where the indictment is dismissed because of outrageous government misconduct are rare, this is such a case because it is "a unique case of blatant bad faith tampering, destruction and fabrication of evidence which was used to indict, extradite and incarcerate

Crim. No. 04-250 (JAG)                                                5

[him]." (Docket No 268, p. 3). Specifically, he argues: (1) that the totality of the circumstances shows that N-17 has been tampered with and that Defendant presented credible evidence that N-17 had been intentionally tampered with (Docket No. 268, p. 10-11); (2) that the alleged tampering amounts to outrageous government misconduct (Docket No. 268, p. 17); and, (3) that Defendant will be prejudiced, even though N-17 was suppressed, because Young-Duffis may still testify regarding the content of the conversation (Docket No. 268, p. 23).

Finally, on March 9, 2009, Defendant filed a Reply to the Government's Objections. (Docket No. 275). On the same date, the Government filed its Response in Opposition to Defendant's Objections to the Report and Recommendation. (Docket No. 276). On March 17, 2009, Defendant filed a Request for Oral Argument under Rule 7.1(g) of the Local Rules. (Docket No. 277). The Government filed its response on April 3, 2009. (Docket No. 279). On the same date, this Court denied Defendant's request. (Docket No. 281). On April 13, 2009, Defendant filed a Motion for Reconsideration. (Docket No. 282). On April 20, 2009, the Government filed its opposition. (Docket No. 286). On April 21, 2009, this Court denied Defendant's Motion for Reconsideration. (Docket No. 287).

## STANDARD OF REVIEW

Pursuant to Title 28, United States Code, Section 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a District

Crim. No. 04-250 (JAG)                                                    6

Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See <u>Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.</u>, 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." <u>United States of America v. Mercado Pagan</u>, 286 F.Supp.2d 231, 233 (D.P.R. 2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." <u>Rivera-De-Leon v. Maxon Eng'g Servs.</u>, 283 F. Supp. 2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objections, "the district court can assume that they have agreed to the magistrate's recommendation." <u>Alamo Rodriguez</u>, 286 F.Supp.2d at 146 (citing <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247 (1st Cir. 1985)).

**DISCUSSION**

A. <u>Government's Objections</u>

   1. <u>Lack of evidence</u>

The Government objects to the Magistrate Judge's finding that it "has not presented clear and convincing evidence that tape N-17 is a true, accurate and authentic recording of the conversation, at

Crim. No. 04-250 (JAG)                                                    7

a given time between the parties involved." (Docket No. 266). The First Circuit has established that, in the case of recorded conversations, proof that the tape recording accurately reflects the conversation in question is required to establish that it is accurate, authentic and trustworthy. See United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986); United States v. Rengifo, 789 F.2d 975, 978-79 (1st Cir. 1986); United States v. Doyon, 194 F.3d 207, 212 (1st Cir. 1997).

   Regardless of the expert witnesses's discrepancies as to certain specific technical issues, such as whether or not N-17's header had been partially erased, the totality of the circumstances point to the fact that N-17 is not an accurate reflection of the conversation in question. First and foremost, the Government's own expert witness, Dickey, concedes that N-17 is not a recording of a complete conversation but rather that it has two segments. A first segment between {00:23-03:34} and a second segment between {03:34-07:04}. Dickey characterized the segments as being "independently continuous." (Tr. 0/25/08, Docket No. 243, pp. 18-24). In other words, the Government's expert witness was not able to affirm that N-17 is the recording of a complete conversation. Neither was he able to establish the length of the stop/start between N-17's two segments.[1] Id. at p. 24.

---

[1] It is unnecessary to discuss in depth the other anomalies identified by the Magistrate Judge because this Court considers that the fact that N-17 has two segments is enough to conclude it is not accurate, authentic and trustworthy. These are: (1) the

Crim. No. 04-250 (JAG)                                                  8

Since the Government's own expert witness is unable to establish that N-17 is the recording of a complete conversation and because it is unable to establish the amount of time between N-17's two segments, it must be concluded that the Government did not prove that the recording accurately reflects the conversation in question as required under Carbone.

The Government also alleges that the Magistrate Judge focused only on the portions of N-17's transcript that are right before and after the break in the recording when deciding whether N-17 is accurate authentic and trustworthy. The Government contends that the totality of the recording shows one continuous conversation. The Government contends that, "[a] review of the transcript demonstrates continuity both in thought and context by the speakers, thus placing into doubt whether or not the break in the conversation was of any substantial length." (Docket No. 22, p. 7). This Court is unpersuaded by the Government's argument. Even if it may be possible to read the transcript in a way that could lead a reasonable person to believe a single conversation was recorded, the Government's own expert witness was unable to categorically state that N-17 is technically the recording of a single conversation. Thus, this Court finds that the Government has failed

---

abrupt stop at the end of the recording; (2) whether or not the tape's header had been partially erased; (3) the date on N-17's header (December 27, 2003) is different than that on the Government's Report of Investigation of January 8, 2004 (January 7, 2003). (Docket No. 257)

Crim. No. 04-250 (JAG)                                                    9

to establish that the recording is accurate, authentic and trustworthy.

2. <u>Chain of custody</u>

The Government further objects to the Magistrate Judge's finding that it failed to present evidence relating to N-17's chain of custody. (Docket No. 266, p. 7). According to the Government, a possible defect in the chain of custody factors into the evidence's weight rather than its admissibility. The Government is partially correct.

It is well established that a defect in the chain of custody factors into the weight of the evidence and not into its admissibility. <u>United States v. Barrow</u>, 448 F.3d 37, 42 (1st Cir. 2006). However, chain of custody must be established in order to authenticate evidence because "authentication is a condition precedent to admissibility." <u>Id.</u> The First Circuit has said, "if the offered evidence is of the type that is not readily identifiable or is susceptible to alteration, a testimonial tracing of the chain of custody is necessary. The purpose of testimonial tracing is to render it improbable that the original item either has been exchanged with another or has been tampered with or contaminated." <u>United States v. Anderson</u>, 452 F.3d 66, 80 (1st Cir. 2006) (citing <u>United States v. Abreu</u>, 952 F.2d at 1467 (1st Cir. 1992)). In other words, even if a possible defect in the chain of custody is to be weighed by the jury, the Government must still

Crim. No. 04-250 (JAG)                                               10

establish chain of custody and authenticate its evidence. In this case, the Government has not offered any evidence or testimony to establish N-17's chain of custody. It must be concluded that the Government failed to authenticate N-17, which renders it inadmissible. In sum, this Court finds that because N-17 is untrustworthy and since the Government has not authenticated it, N-17 must be suppressed.

B. Defendant's Objections

1. Evidence of tampering

    Defendant objects to the Magistrate Judge's finding that he failed to present credible evidence that the recording was intentionally tampered with. (Docket No. 268, p. 11). Defendant alleges that the totality of the circumstances surrounding N-17 are enough to prove tampering. (Docket No. 268, p. 11). To establish intentional tampering he relies on Griffin's explanation of the partial erasure of N-17's header. According to Griffin, N-17's header was partially erased by someone who pressed the Record/Erase button.[2] (Tr. 9/25/08, Docket No. 243, p. 36). The Defendant posits that Young-Duffis tried to erase the header because he wanted the recording date to be the same as that of his meeting with Government agents in January 7, 2004. (Docket No. 268, p. 12). The Defendant also contends that according to the Drug Enforcement

---

[2]According to Dickey the partial erasure of the date on the tape's header corresponds to a malfunction of the recording device. (Tr. 9/25/08, Docket No. 243, pp. 10-13).

Crim. No. 04-250 (JAG)                                                   11

Agency ("DEA") Investigative Report for January 8, 2008 (Exhibit F), N-17 was recorded on January 7, 2004, the same date N-18 was allegedly recorded. Id. at 13.

Defendant also brings to the Court's attention certain facts that according to him indicate that N-17 had been tampered with. For instance, he contends that N-17 and N-18 have similarities that indicate that N-17 had been tampered with. According to Defendant N-17 and N-18 both: (1) are standard sized cassettes rather than micro cassettes; (2) have a printed DEA label rather than the hand-scribbled labels typical of field recordings; (3) have a maximum recording time of fifteen minutes per side, rather than the 60 or more minutes of micro cassettes; (4) are of relatively poor recording quality, consistent with copies; (5) and, lack a dial tone, dialing sound, and ringing sound after a header. (Docket No. 268, p. 10).

He also contends that the fact that Young-Duffis did not testify, even though he was in the courtroom the day of the second suppression hearing, indicates that the Government lacks confidence in its chief witness to the facts at issue. Finally, Defendant points out that the Government has not explained why N-18 was found to be a copy, why N-17's header is partially erased, why Young-Duffis did not testify at the second suppression hearing and why there is a stop/start in N-17. (Docket No. 268, p. 11).

It is well settled that defendants who allege tampering must

Crim. No. 04-250 (JAG)                                                12

present credible evidence of its occurrence. "[T]he party challenging a tape recording bears the burden of showing they are inaccurate." United States v. Rengifo, 789 F.2d 975, 79 (1st Cir. 1986) (citing United States v. Cortellesso, 663 F.2d 361, 64 (1st Cir. 1981)). If a party challenging the accuracy of an authenticated recording bears the burden of proof then it follows that a party alleging tampering must also bear the burden of proof.

In this case, N-17 is inadmissible because the Government was unable to establish its accuracy and Defendant was able to establish that the totality of the circumstances show its inaccuracy. However, Defendant wants this Court to conclude that N-17 has been tampered with because N-17 was deemed inadmissible and because N-18 was voluntarily withdrawn by the Government. This Court disagrees with Defendant. The fact that a tape is inadmissible does not necessarily imply tampering. The partial erasure of N-17's header is not enough, either by itself or in combination with N-17's other anomalies, to establish it had been tampered with. Neither are the similarities N-17 has with N-18, the fact that Young-Duffis did not testify, nor the lack of explanation as to why N-18 is a copy, enough to establish that tampering took place. However puzzling the totality of the circumstances Defendant points out may be, they do not constitute credible evidence of tampering.

Crim. No. 04-250 (JAG)                                                13

2. <u>Outrageous Government Misconduct</u>

Since this Court finds that the Defendant failed to present credible evidence of tampering, it is unnecessary to address whether any outrageous Government misconduct that could warrant dismissal of the indictment took place. This Court echoes the Magistrate Judge in concluding that, "[t]he reasons for which we find that N-17 is unreliable, as explained above, do not amount to outrageous government misconduct which was pervasive undermining the integrity of the investigation." (Docket No. 257, p. 14).

3. <u>Defendant's prejudice</u>

Defendant also objects to the Magistrate Judge's refusal to recommend the dismissal of the indictment on the basis of the prejudice that he will suffer. Defendant argues that even if N-17 is suppressed, he will be highly prejudiced because Young-Duffis may still testify regarding the content of the conversation allegedly recorded in N-17. He contends that the only way to prevent the prejudice is to dismiss the indictment. (Docket No. 268, p. 23).

Under the Federal Rules of Evidence, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." Fed.R.Evid.1002. "The purpose of the rule is to prevent inaccuracy and fraud when attempting to prove the content of a writing [or recording]."

Crim. No. 04-250 (JAG)                                                    14

United States v. Holland, 223 Fed. App. 891, 898 (11th Cir. 2007) (citing United States v. Ross, 33 F.3d 1507, 1513 (11th Cir. 1994)). A witness or a party may testify regarding an event he or she witnessed or experienced even when there is a writing, recording or photograph of the event. United States v. Miller, 248 Fed.Appx. 426, 428 (3rd Cir. 2007). When a conversation has been recorded a participant in the conversation may testify regarding the content of the conversation even if the tape was itself inadmissible. United States v. Gonzales-Benitez, 1537 F.2d 1051, 54 (9th Cir. 1976). Also, "[A] tape recording cannot be said to be the best evidence of a conversation when a party seeks to call a participant in or observer of the conversation to testify to it. In that instance, the best evidence rule has no application at all." United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004) (citing United States v. Workinger, 90 F.3d 1409, 1415 (9th Cir. 1996)).

Rule 1002 of the Federal Rules of Evidence does not apply to this case and will not prevent Young-Duffis from testifying regarding the contents of the conversation allegedly recorded in N-17. If Young-Duffis in fact participated in the alleged conversation, he may testify regarding what was said in its course. Therefore, Defendant's objection is meritless.

## CONCLUSION

For the reasons set forth above, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation, and accordingly,

Crim. No. 04-250 (JAG)                                                15

**GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss/Suppress. (Docket Nos. 146, 225). Specifically, tape recording N-17 shall be suppressed. However, Defendant's request for dismissal of the indictment is denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 7th day of May 2009.


                                    S/Jay A. García-Gregory
                                    JAY A. GARCÍA-GREGORY
                                    United States District Judge